UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                 CRIMINAL NO.  10-20123

v.                                 HON. VICTORIA ROBERTS

D-1 David Brian Stone,
D-2 David Brian Stone, Jr.,
D-3 Joshua Matthew Stone,
D-4 Tina Mae Stone,
D-6 Michael David Meeks,
D-7 Thomas William Piatek,
D-8 Kristopher T. Sickles,

        Defendants.

_____/

**GOVERNMENT'S RESPONSE TO MOTION TO PRECLUDE OR LIMIT THE
GOVERNMENT'S EXPERT WITNESS MICHAEL BARKUN AND FOR
<u>DAUBERT HEARING</u>**

The United States of America, by and through its undersigned attorneys, responds to defendant David Brian Stone's motion (Docket Entry (DE) 532) to preclude the government from calling an expert witness, Michael Barkun:[1]  Mr. Barkun's testimony concerning militias and conspiracy belief is relevant to the issues at hand in this litigation and should be allowed.  Given the nature of Mr. Barkun's specialized testimony, a pretrial *Daubert* hearing is in order.  Consequently, the motion should be denied as to exclusion and granted as to the scheduling of a *Daubert* hearing for the following reasons set forth in the attached brief:

_____

[1]  All remaining defendants scheduled to proceed to trial on February 7, 2012 (David Brian Stone, Jr. (D-2), Joshua Stone (D-3), Tina Stone (D-4), Michael David Meeks (D-6), and Kristopher Sickles (D-8)) filed joinders to this motion.

-1-

1.     Federal Rule of Evidence (Fed.R.Evid.) 702 provides in relevant part that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . ."

2.     In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), while the Supreme Court recognized that under Rule 702 "the evaluation of expert testimony is generally left to juries, the Court emphasized the trial judge's 'gatekeeping' role with respect to expert testimony on scientific issues." *Pride v. BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000) (citing *Daubert*). *Daubert* applies to all expert testimony, not just scientific testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

3.     "To qualify as an expert under Rule 702, a witness must first establish his expertise by reference to 'knowledge, skill, experience, training, or education.'" *Pride v. BIC Corp.*, 218 F.3d at 577 (citation omitted).  "Second, Rule 702 requires a proffered expert to testify to 'scientific, technical or other specialized knowledge.'" *Id.* (citation omitted).

4.     The government believes Mr. Barkun's expertise can meet the requirements of Rule 702 and request a Daubert hearing to establish his expertise and relevance to the present case.

Consequently, the defendant's motion should be denied in part and granted as to the holding of a *Daubert* hearing.

Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

*s/ Christopher Graveline*
CHRISTOPHER GRAVELINE (P69515)
SHELDON N. LIGHT (P28798)
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9155
christopher.graveline2@usdoj.gov
sheldon.light@usdoj.gov

Dated: January 12, 2012

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        CRIMINAL NO.  10-20123

v.                                        HON. VICTORIA ROBERTS

D-1 David Brian Stone,
D-2 David Brian Stone, Jr.,
D-3 Joshua Matthew Stone,
D-4 Tina Mae Stone,
D-6 Michael David Meeks,
D-7 Thomas William Piatek,
D-8 Kristopher T. Sickles,

                Defendants.

_____/

**GOVERNMENT'S BRIEF IN SUPPORT OF RESPONSE TO MOTION
TO PRECLUDE OR LIMIT THE GOVERNMENT'S EXPERT WITNESS
MICHAEL BARKUN AND FOR DAUBERT HEARING**

-1-

**TABLE OF AUTHORITIES**

Federal Rule of Evidence 702 (and Committee Notes). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 7

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). . . . . . . . . . . . . . . . 2, 4, 7

*United States v. Salameh,* 152 F.3d 88 (2d Cir. 1998).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*United States v. Daly,* 842 F.2d 1380 (2d Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

*United States v. Abdulmutallab,* (E.D.MI - Crim. Dokt #10-20005, Docket Entry #104)
Order Addressing Motions, September 27, 2011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Peoples,* 250 F.3d 630 (8th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**STATEMENT OF ISSUE PRESENTED**

Whether the Court should hold a Daubert hearing to establish the government's the government's proffered expert witness' expertise and relevance.

**CONTROLLING / MOST APPROPRIATE AUTHORITY**

Federal Rule of Evidence 702

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)

*United States v. Salameh,* 152 F.3d 88 (2d Cir. 1998)

*United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000)

-2-

## FACTUAL BACKGROUND

On March 27, 2010, during the initial searches of the defendants' residences, a considerable amount of anti-government and conspiracy theory literature and books were found at a number of the defendants' residences.  Many of these tracts decry the coming of something called the "New World Order;" warn against the coming of the "police state;"accuse the federal government, and its law enforcement agencies, in being part of vast conspiracies; discuss the influence of secret groups such as the Illuminati and the Trilateral Commission; express outrage at the events surrounding Ruby Ridge, Waco, and Oklahoma City; and warn of the imminent nature of either the Apocalypse or World War III.  This seized evidence has been and continues to available for inspection by defense.

On February 1, 2011, the government initially provided notice of expert witnesses, via e-mail, and stated its intention to "offer expert testimony about militias and conspiracism." *See* Attachment #1 (Email, dated February 1, 2011).  On August 5, 2011, the government provided notice of its intention to call Dr. Jonathan White to testify about militias, "symbols of this movement as well as its rallying points/issues, the beliefs of certain sects of the militia movement concerning the federal government and the "New World Order (NWO)."  Dr. White had to withdraw his participation from the case due to a personal issue.  Consequently, on November 30, 2011, the government identified Michael Barkun as an expert prepared to testify concerning his expertise in conspiracy belief.  *See* Attachment #2, (Expert Witness Disclosures, dated November 1, 2011, paragraph H).  Mr. Barkun's curriculum vitae was also provided on that day.  *See* Attachment #3, (Michael Barkun's Curriculum Vitae)[2]

---

2. The government highlights this time line simply to inform the Court that the government's intent to call an expert witness regarding militias and conspiracy theory is not a new idea suddenly sprung upon the defense.

On January 5, 2012, defendant David Brian Stone filed the instant motion to preclude Mr. Barkun's testimony and for a *Daubert* hearing.  All defendants currently joined to proceed to trial on February 7, 2012 joined the motion.

## LAW

Fed.R.Evid. 702 allows a party to introduce expert testimony where that testimony is both relevant and reliable. *See* Fed.R.Evid. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).  Fed.R.Evid. 702 further provides in relevant part that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise . . ."   Consistent with this rule, a district court must perform its "gatekeeping" role of ensuring that the testimony satisfies those criteria, *Daubert*, 509 U.S. at 589; however, "the rejection of expert testimony is the exception rather than the rule."   Fed.R.Evid. 702, Advisory Committee Notes, 2000.   "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are traditional and appropriate means," not exclusion, of challenging expert evidence believed by one party to be suspect. *Daubert*, 509 U.S. at 595.

## ARGUMENT

The defendant's motion for exclusion should be denied; however, his motion for a *Daubert* hearing should be granted.   First, Mr. Barkun does possess specialized knowledge in the area of conspiracy belief.  He was a professor of political science for thirty-six years at the Maxwell School, Syracuse University, specializing in the study of conspiracy belief.  He has written numerous books and articles on the topic of conspiracy belief, the New World Order, apocalyptic beliefs, and the

-4-

militia movement.  *See* Attachment #4, (Michael Barkun's Curriculum Vitae).  Conspiracy belief,

according to Mr. Barkun, is the belief that an organization made up of individuals or groups was or

is acting covertly to achieve some malevolent end.[3]  People who subscribe to a conspiracy beliefs

often see seemingly unconnected events as linked; have the belief that nothing is as it seems; and that

all events never happen by accident.  These thoughts spark belief in secret organizations that intend

harm for their own malevolent ends.  Mr. Barkun has spent over the last twenty years studying this

thought and can explain for the jury what is meant by such concepts as: the New World Order,

Illuminati, the Bilderbergers, the Trilateral Commission and the importance this movement places

on the events at Ruby Ridge, Waco, and Oklahoma City.  Mr. Barkun has also inspected the evidence

seized from the defendants' residences and found numerous references to these concepts.   These

terms and concepts have significance and mean something that are not apparent on their face to the

average lay juror.  Mr. Barkun's education and experience can unlock the meaning and provide

jurors a window into  this apocalyptic world view, and the belief that massive conspiracies are at

---

2.  In an e-mail, dated January 11, 2012, the Court instructed the government to submit Mr. Barkun's opinions, a summary, and reports to assist in the disposition of this motion.  For reasons discussed later in the response, Mr. Barkun's expertise does not lend itself to him offering opinion testimony at trial.  However, in order to provide the defense and Court with as much information as possible, the government intends to elicit from Mr. Barkun his knowledge, based upon education and experience, about conspiracy belief, belief in secret organizations, his theory of stigmatized knowledge, the wide acceptance of a unifying conspiracy theory commonly denoted by the phrase New World Order, historical background on groups especially popular within conspiracy belief (the Illuminati, Trilateral Commission), and conspiracy theorists fascination with the apocalypse.  An exposition of Mr. Barkun's thought on these topics are contained in his book, "A Culture of Conspiracy: Apocalyptic Visions in Contemporary America,"University of California Press, 2003.  The government will be basing its direct examination on Chapters 1 - 5 of this book and correlating its concepts with the evidence found in the defendants' residences.  The government believes the information contained in this response, coupled with its previous disclosures on November 30, 2011, meets its obligation under Rule 16.

work to subvert and oppress an individual's freedom, in ways similar to expert witness testimony concerning terrorism or organized crime. *See United States v. Salameh,* 152 F.3d 88, 111 (2d Cir. 1998)( "evidence that provides background information necessary to the jury's understanding of the nature of the conspiratorial agreement is properly admitted 'to furnish an explanation of the understanding or intent with which certain acts were performed.'")(quoting *United States v. Daly,* 842 F.2d 1380, 1388 (2d Cir. 1988)); *United States v. Farhane*, 634 F.3d 127, 159 (2d Cir. 2011) (admission of expert "testimony about al Qaeda's history and structure" was upheld); *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000)(expert testimony "regarding the inner-workings of organized crime has been held to be a proper subject of expert opinion because such matters are 'generally beyond the understanding of the average layman.'")(further citation omitted)*; see also United States v. Abdulmutallab,* (E.D.MI - 10-20005, Docket Entry #104), Order Addressing Motions, September 27, 2011 (granting government's motion as to Al-Qaeda expert and martyrdom expert)(Attached as Attachment #4).

It is important to note that  it is not the government's intent to elicit "opinion" testimony from Mr. Barkun.  At no point will the government ask Mr. Barkun, based upon his expertise, to opine as to whether any member of the Hutaree was engaged in committing seditious conspiracy or what he believes their actions point to.[4]  The government's view of Mr. Barkun's proffered testimony is to explain to the jury: this evidence was found in the defendants' residence, are you familiar with the

---

3. It was the government, in its expert witness disclosure of November 30, 2011, who first raised the issue of having Mr. Barkun "form any opinion or produce any written work product."  However, after spending time with Mr. Barkun, the government realized that his testimony will not be opinion testimony nor will he draw any conclusions about these particular defendants.  Consequently, it is not contemplated that he will produce a written report or work product. If he does, it will be provided to defense counsel with haste.

thoughts expressed in this literature/videos, what is the historical underpinnings of this thought, explain conspiracy belief and how/why would someone come to believe these conspiracy theories, identify certain of the most popular advocates of conspiracy theories, and speak on the some of the most well-known events and concepts.   This type of testimony is entirely appropriate under Fed.R.Evid. 702.   The Advisory Committed notes point out that,

> "[m]ost of the literature assumes that experts testify only in forms of opinions. The assumption is logically unfounded.  The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts...It seems wise to recognize that opinions are not indispensable and to encourage the use of expert testimony in non-opinion form when Counsel believes that trier can itself draw the requisite inference.  (Fed.R.Evid. 702, Advisory Committee Notes, 1972).

Mr. Barkun's knowledge can experts can "provide specialized explanations or interpretations that an untrained laymen could not make if perceiving the same events." *United States v. Peoples,* 250 F.3d 630, 641 (8th Cir. 2001).

The government does believe that a *Daubert* hearing is warranted in order for the Court to judge for itself Mr. Barkun's knowledge and expertise when it comes to this particular topic.  The government is confident that once the Court hears from Mr. Barkun, it will conclude that his testimony is relevant, probative, and will serve as an asset to the trier of fact.

## <u>CONCLUSION</u>

For all the reasons stated above, the defendant's motion should be denied as to exclusion of

Mr. Barkun's testimony and granted as to holding a *Daubert* hearing.


Respectfully submitted,

BARBARA L. McQUADE
United States Attorney

*s/ Christopher Graveline*
CHRISTOPHER GRAVELINE (P69515)
SHELDON N. LIGHT (P28798)
Assistant U.S. Attorneys
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9155
christopher.graveline2@usdoj.gov
sheldon.light@usdoj.gov


Dated: January 12, 2012

<u>Certificate of Service</u>

I hereby certify that on January 12, 2012, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

      Richard Helfrick, Esq.
      Michael Rataj, Esq.
      Mark Satawa, Esq.
      Henry Scharg, Esq.
      Todd A. Shanker, Esq.
      William Swor, Esq.
      James Thomas, Esq.
      Arthur Weiss, Esq.

*s/ Christopher Graveline*
CHRISTOPHER GRAVELINE (P69515)
Assistant U.S. Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9155
christopher.graveline2@usdoj.gov